## In re State Aid Highway No. 1, Peru, Vermont

[328 A.2d 667]

No. 237-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed October 1, 1974

Motion for Reargument Denied December 3, 1974

*Sydney J. Meachem, Esq.,* Manchester Center, for Town of Peru.

*Williams, Witten, Carter & Wickes,* Bennington, for Vermont Natural Resources Council, Inc.

**Larrow, J.** This is an appeal by Town of Peru from Declaratory Ruling No. 37 of the Environmental Board, dated October 24, 1973, and signed by its chairman. In substance, the ruling holds that a proposed improvement of State Aid Road No. 1, in the Town of Peru is subject to the jurisdiction of District Environmental Commission No. 8 under Chapter 151, Title 10, V.S.A., as involving more than 10 acres of land and "resulting in the necessity of continued improvements" of other parts of Road No. 1 in the Towns of Peru, Landgrove and Weston.

We note at the outset that the manner in which this case comes before us effectively precludes disposition of some, at least, of the substantive issues involved. They are important, and will undoubtedly recur. But we cannot review the findings of the Environmental Board, or its conclusions of law based thereon, when we are of the opinion, as we are, that the petition for a declaratory ruling was improperly before the Board in the first instance.

In November, 1972, the Town of Peru filed an application for permit with District Environmental Commission No. 8, to improve some .8 miles of State Aid Highway No. 1, including a bridge replacement, widening, straightening and regrading. The application stated some 10.6 acres were involved, a calculation which, based on a three rod highway, had to include the approximate 1.8 miles of Highway No. 1 lying in the Town of Peru. The project was to be 100% funded by Federal Forest Highways funds.

Highway No. 1 is a segment of Forest Highway No. 3, running through Peru, Landgrove and Weston, some 6.76 miles *in toto*. Landgrove and Weston had previously requested funds for improving their part of the highway, and a route studies location report had been prepared by the Highway Department covering the whole mileage. But, in 1973, Landgrove and Weston, pursuant to town meeting votes, decided not to participate in the project. Funds are currently available for only a .3 mile part of the project, and no commitment exists for future funds from either the Forest Service or the Highway Department. The application was amended to cover only the proposed .3 mile improvement.

Peru then moved the District Commission to withdraw its permit application on the ground that the project involved fewer than 10 acres, as presently contemplated. The Commission so found, and, on June 18, 1973, ruled it was without jurisdiction and dismissed the application. This ruling was not appealed from.

Appellees here, Vermont Natural Resources Council, Inc., and the Agency of Environmental Conservation, had been admitted as parties before the District Commission. They did not appeal, but instead elected to file with the Environmental Control Board the petition for declaratory ruling here under consideration.

We can only speculate as to the motives for electing this procedure. But it is apparent the Council is not enumerated as an appropriate party appellant under 10 V.S.A. § 6085(c). *Cf. In re Preseault*, 130 Vt. 343, 292 A.2d 832 (1972). And it is far from clear that the Agency itself is an appropriate party appellant in adjudicatory proceedings within itself. *Cf.* general discussion in *Dale M. Madden Construction, Inc.* v. *Hodgson*, 502 F.2d 278 (9th Cir. 1974). And, even if the Council and the Agency be held to be proper parties appellant, strategic considerations might well have led to avoiding the right of removal to county (now superior) court conferred upon the applicant by 10 V.S.A. § 6089(a), effective July 1, 1973. Whatever the reasons, this petition was resorted to in lieu of appeal. We hold this to be improper, for a number of reasons, discussed *seriatim*.

█ Read with any reasonable construction, the petition in issue here attacks the validity of the finding by the District Commission that it was without jurisdiction. 3 V.S.A. § 808, authorizing declaratory rulings by an agency, speaks of such rulings as being "to the *applicability* of any statutory provision or of any rule or order of the agency." 3 V.S.A. § 807, referring to declaratory judgments in county court, speaks of declaring "the *validity or applicability*" of a rule. It is logically inferable that the omission of "validity" from § 808 is significant, and that the legislative intent was that validity of any order was not an appropriate subject for an agency declaratory ruling.

■ Further, by analogy to the essentially similar procedures for declaratory judgments, the resort to this petition in lieu of appeal is inappropriate. Speaking of the Declaratory Judgment Act, the court said, in *Clark* v. *Memolo*, 174 F.2d 978, 981 (D.C. Cir. 1949):

> [T]he primary purpose of the act [is] to have a declaration of rights not theretofore determined, and not to determine whether rights theretofore adjudicated have been properly adjudicated.

We subscribe to this view, and note that other courts have also held that proceedings under various declaratory judgment statutes cannot be substituted for adequate and available remedies of review (as we have under 10 V.S.A. § 6089) of decisions by administrative tribunals. *Cf. Lajiness* v. *Yaeger*, 352 Mich. 468, 90 N.W.2d 487 (1958), and *Alabama Public Service Comm.* v. *AAA Motor Lines, Inc.*, 272 Ala. 362, 131 So.2d 172, *cert. denied*, 368 U.S. 896 (1961).

We therefore hold the Environmental Board, while it has appellate jurisdiction over the District Commissions under 10 V.S.A. § 6089, when timely invoked by appropriate parties, may not exercise such jurisdiction under 3 V.S.A. § 808, relating to declaratory rulings. To hold otherwise would be to thwart the clear legislative intent as to who are appropriate appellate parties expressed in 10 V.S.A. § 6085(c), and as to right of removal to superior court conferred by 10 V.S.A. § 6089(c).

■■ In so holding, we are cognizant that this particular issue was not raised below or briefed by the parties. We are also cognizant of the requirement for "extraordinary circumstances" to justify consideration of an objection not so raised, as contained in 10 V.S.A. § 6089(c). Such circumstances here exist. We are in a field of almost complete first impression. We are in a time situation where a right of removal became effective as to an appeal during the very interval in which a right of appeal existed. And we are confronted with other gross irregularities, hereinafter treated, which would, in sum, make such "egregious error" that we could not in conscience allow the ruling below to stand. On the whole case, there is certainly much more than "a reasonable basis for fear that an

injustice has been done." See *State* v. *Hood,* 123 Vt. 273, 187 A.2d 499 (1962); *State* v. *Morrill,* 127 Vt. 506, 253 A.2d 142 (1969); and *In re Maher,* 132 Vt. 560, 326 A.2d 142 (1974), this day decided. As stated in *In re Maher, supra,* and in *Petition of Green Mountain Power Corp.,* 131 Vt. 284, 305 A.2d 571 (1973), questions of fairness involving procedural rights afforded by administrative bodies must be examined when they approach due process problems of constitutional dimension.

We feel quite strongly that there are patent errors in the record before us, which, although not briefed, would require reversal and remand, were it not for our previously expressed view that the Environmental Board lacked jurisdiction to reverse an unappealed from ruling of the District Commission by resort to a declaratory ruling. We touch upon these errors in an endeavor to prevent their recurrence in this rapidly developing field.

The Environmental Board, by statute, has nine members. By its present rules, a majority is required to constitute a quorum, unless waived, and four are required in any event. The hearing below was conducted in two sessions, on July 11, 1973, and October 10, 1973. At the July 11 hearing, four members were present, including the chairman and Mrs. Garland, a member. At the October 10 hearing five were present when the hearing began, including the chairman and Mrs. Garland, and two more came in during the course of the hearing. Objection was made to the participation of Mrs. Garland and the chairman, on the admitted grounds that Mrs. Garland was a member of the governing board of Vermont Natural Resources Council, Inc., one of the petitioners, and that the chairman was a contributor to that organization. One of these objections was waived on the record (which one not being clear) and both members sat in each instance. The eventual findings and conclusions are signed by the chairman alone, and do not indicate which members actually participated in the decision.

Mrs. Garland, was, of course, disqualified to act under 12 V.S.A. § 61, as was the chairman if his contributions, or feelings generally, were sufficient to give him an interest in the event. We have recently strongly emphasized the necessity for impartiality and the avoidance of even the appear-

ance of partiality in our judicial process. *Aronstam* v. *Cashman*, 132 Vt. 538, 325 A.2d 361 (1974). The events below were not compatible with those norms. At the very least, where obvious disqualification exists, the record should clearly show a waiver. And, if not obvious, it should show clearly any reasons a judicial officer may have for not disqualifying himself. Although the American Bar Association's Code of Judicial Conduct is not yet adopted in this jurisdiction, we note that in a commentary to Canon 3, relating to impartiality, it is suggested that the parties and lawyers, independently of the judge's participation, may agree in writing that his relationship is immaterial or his financial interest insubstantial, so that he is not disqualified. Such a procedure here would have made clear whose interest was objected to and whose was not, and given a record which could have been more closely scrutinized.

In any event, under the rules of the Board existing prior to October 9, 1973, a quorum required a majority of the Board, and in no event less than four members. (Rule 11, effective August 1, 1971.) Under this rule, no quorum was present at the July 11, 1973, hearing, even counting the chairman and Mrs. Garland. And doubt certainly exists as to the presence of a quorum at the October 10, 1973, hearing. Under the liberal provisions of 3 V.S.A. § 811, this does not preclude the rendition of a decision, but it does bring the provisions of that section into effect. Under it, in a contested case where a majority of the officials of the agency who are to render the final decision, if adverse to a party other than the agency, have not heard the case or read the record, the decision is not to be rendered until a proposal for decision is served on the parties, and an opportunity afforded to file exceptions, and present briefs and oral argument. These provisions were neither complied with nor waived; the only decision rendered was the final one, signed by the chairman, and filed long before the transcripts were even prepared. From the record here presented, it is impossible to determine what members if any, other than the chairman, did in fact participate in the decision. Their participation is not recited; their signatures do not appear.

As we previously pointed out, we are vacating the declaratory ruling below on jurisdictional grounds. The other grounds of error considered might well have been the basis for remand

only. We have alluded to them because of the growing importance of the subject matter, and of the intricate procedures which accompany it. Environmental laws affect very substantial rights, and it is vital that the procedures under which they are enforced be scrupulously observed and impartially administered. Any failure in this respect can quickly rise to constitutional dimensions. The "rush to judgment" which characterized the proceedings below, even though in part unobjected to, in our view is totally incompatible with the standards we have long sought to enforce.

*Declaratory Ruling No. 37 of the Environmental Board, dated October 24, 1973, is vacated.*