### In re J. S., Juvenile

[420 A.2d 870]

No. 292-79

Present: Daley, Larrow, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed September 8, 1980

8

 

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Petitioner.

*M. Jerome Diamond,* Attorney General, Montpelier, and *Alan B. Coulman* and *Peter M. Nowlan,* Assistant Attorneys General, Waterbury, for Defendant.

**Billings, J.** This case arises out of a determination by the commissioner of corrections to transfer a juvenile in his custody, J. S., to a "camp" in Florida. After his hearing before the commissioner, J. S. moved for review in district court. He now appeals the order of the district court permitting his transfer to Florida.

J. S. contends that the commissioner does not have the authority to transfer juveniles out of state without a court hearing pursuant to the Interstate Compact on the Placement of Children, 33 V.S.A. ch. 42, and that the trial court failed to make the findings requisite under 33 V.S.A. § 3156 for such a transfer. The corrections department's position has been that the transfer of J. S. is not covered by the compact, 33 V.S.A. §§ 3205, 3156, 3152(4), but by 33 V.S.A. § 657, which does not provide for hearing prior to transfer. The department also contends that J. S. lacks standing to bring this action, because his father and natural guardian consented to the transfer.

The trial court determined at the hearing below that the interests of J. S. and his parents were conflicting inasmuch as J. S. and his father had taken contrary positions on the transfer with respect to the "best interests" of the juvenile at issue under either 33 V.S.A. §§ 3156 or 657. However, in its findings and conclusions, the court determined that the guardianship of the juvenile was "not severed" by a prior adjudication transferring custody to the commissioner.

The department contends that after the prior adjudication, legal guardianship "still remains" with the natural parents of J. S. as part of their "residual parental rights and responsibilities." 33 V.S.A. § 632(a)(16). Such guardianship is "created by order of the juvenile court" and invests in the guardian "(A) the authority . . . to represent the minor in legal actions; to make other decisions concerning the minor of substantial legal significance. . . ." 33 V.S.A. § 632(a)(6). Inasmuch as guardianship "still remains" with the parents, it is contended that only the parents may bring action on the child's behalf and that the court may not permit suit by the juvenile's next friend or guardian ad litem under D.C.C.R. 17(b), V.R.C.P. 17(b). The appellant, however, asserts that 33 V.S.A. § 653(a) directs the court, which retains jurisdiction over him, 33 V.S.A. § 634, to appoint a guardian ad litem where there is the appearance that the interest of the juvenile and his parent or guardian may conflict.

Section 653(a) applies by its terms to any "proceeding" under chapter 12 of Title 33. Section 634 makes it clear that once the juvenile court obtains "jurisdiction of a child," it retains that jurisdiction unless terminated by court order, until the child reaches majority, "for the purposes of implementing the orders made and filed in that proceeding." In addition, "[a]n order of the court may also be amended, modified, set aside or terminated by that court at any time upon petition therefor by a party or on its own motion on the ground that changed circumstances so require in the best interests of the child." 33 V.S.A. § 659(a); see *In re A. A.*, 134 Vt. 41, 349 A.2d 230 (1975).

A proposed "placement" of a juvenile who has been adjudicated a delinquent out of state pursuant to 33 V.S.A. ch. 42 requires a court determination that there is no "equivalent facility" in this state for care of the juvenile, that "[i]nstitutional care in the other jurisdiction is in the best interest of the child," and that it would not cause undue hardship. 33 V.S.A. § 3156. Because the purpose of the hearing indicates that "changed circumstances" and their import for the best interests of the child are to be evaluated by the court, such a hearing is of the type contemplated by 33 V.S.A. § 659(a). As such it carries with it the procedural

safeguards attendant any "proceeding" under chapter 12 of Title 33, including the right to the appointment of a guardian ad litem pursuant to section 653(a).

Section 659(b) provides that "any person having . . . an interest in the child may petition the court" for relief under that section. Such a person may be a person seeking recognition as a guardian ad litem pursuant to 33 V.S.A. § 653 on the ground that the interests of the juvenile and those of his parent or guardian appear in conflict. Clearly, the legislature intended such an appointment even though a guardian, as defined by 33 V.S.A. § 632(b), may exist. See 33 V.S.A. § 653(a).

Moreover, the appointment is consistent with the long standing rule that such an appointment "is a power inherent in courts dealing with those before it who are under disability." *In re Dobson*, 125 Vt. 165, 167, 212 A.2d 620, 622 (1965). See also, *In re Raymond*, 137 Vt. 171, 178–79, 400 A.2d 1004, 1008 (1979); *In re Mears*, 124 Vt. 131, 137, 198 A.2d 27, 31 (1964). As was said in *Thomas* v. *Dike*, 11 Vt. 273, 275–76 (1839):

> In this state it has never been doubted that he [a minor] may sue by *prochein ami*. It is sufficient that the guardian does not dissent, and although he may dissent, yet if it is necessary, and for the benefit of the infant, he may sue by *prochein ami*, notwithstanding such dissent.

In the instant case, the dissent of J. S.'s father to this proceeding is notwithstanding. It does not render the court without authority to appoint a guardian ad litem under D.C.C.R. 17(b), V.R.C.P. 17(b), as the department has contended, for the dissent of the parent or guardian to the action, amounting to the appearance of a conflict of interest, 33 V.S.A. § 653(a), renders the guardianship for naught in the matter in action, see e.g., *Dartmouth Savings Bank* v. *Estate of Schoen*, 129 Vt. 315, 322, 276 A.2d 637, 641 (1971). See also, *In re Raymond, supra*. Where the best interests of the child are drawn into question as in the instant case, the existence of a conflict of interest between the juvenile and an existing guardian is for the trial court's determination

under D.C.C.R. 17(b), V.R.C.P. 17(b). The court having found such conflict, which has not been contested here, we find no error below in the appointment of a guardian.

The chief contention of the department is that the transfer of J. S. to the Florida "camp" is not a "placement" covered by the compact, 33 V.S.A. ch. 42, and hence not subject to judicial review, except at the biennial review hearing provided by 33 V.S.A. § 667. 33 V.S.A. § 3156 states that no juvenile delinquent may be "placed" in an out-of-state institution without the hearing provided in that section. A "placement" is defined by 33 V.S.A. § 3152(4) as an "arrangement for the care of a child in a . . . home or in a child-caring agency or institution but does not include . . . any institution primarily educational in character . . . ." The commissioner, having determined that the Florida "camp" is an educational institution, contends that this case falls outside the ambit of the compact. J. S. submits that this transfer falls within the procedural rules of 33 V.S.A. § 3156 and that the commissioner has no power to place delinquent children out of state, except pursuant to the compact.

As this Court stated in *Miner* v. *Chater*, 137 Vt. 330, 333, 403 A.2d 274, 276 (1979), "the Legislature has made clear in Chapter 9 of 3 V.S.A. that the administrative departments may exercise only those powers expressly conferred [see 3 V.S.A. § 203, and more particularly that] 3 V.S.A. § 212(4) specifies the Department of Corrections as an administrative department 'through . . . which the governor, under the constitution, shall exercise such functions as are by law assigned to [the department].' "

Such a limitation is especially pertinent, where the liberty of a person in the custody of the commissioner is being curtailed. *Id.* at 333–34, 403 A.2d at 277; Vt. Const. ch. I, art. 10. While the transfer of a prisoner to out-of-state facilities can threaten grievous loss, *Battick* v. *Stoneman*, 421 F. Supp. 213, 227 (D. Vt. 1976), it does not thereby necessarily rise to the level of a violation of due process, as suggested by J. S., *Meachum* v. *Fano*, 427 U.S. 215, 224, *reh. den.*, 429 U.S. 873 (1976). Nonetheless, the extraterritorial transfer of a juvenile, rather than a convicted criminal, may be a substantial deprivation of liberty. See *Sinhogar* v. *Parry*, 98 Misc. 2d 28,

412 N.Y.S.2d 966, 973 (Sup. Ct. N.Y. Co. 1979). We therefore must ascertain whether the transfer in the instant case is a function by law expressly assigned to the department under 33 V.S.A. § 657(a)(3) or 33 V.S.A. § 3205.

33 V.S.A. § 657(a)(3) reads as follows:

> Transfer legal custody to the commissioner of corrections, who may place the child under his supervision and authority in a family home, a treatment, rehabilitative, or educational institution or facility, including the Weeks school, or a hospital as the commissioner may determine in his judgment to be in the best interests of the child, subject, however, to the provisions of section 662 of this title.

Chapter 42 at 33 V.S.A. § 3205 provides as follows:

> The officers and agencies of this state having authority to place delinquent children may place such a child in an institution or in another state pursuant to Article VI of the Interstate Compact on the Placement of Children and shall retain jurisdiction as provided in Article V thereof.

33 V.S.A. § 3205, enacted 1971, No. 219 (Adj. Sess.), § 10, is a limited authorization for out-of-state transfers of juveniles in the custody of the commissioner of corrections. 33 V.S.A. § 657, enacted 1967, No. 304 (Adj. Sess.), § 27, on the other hand, is a general grant of discretionary powers to make placements of juveniles. The question, therefore, is whether this general statute also authorizes extraterritorial placements.

It is clear that 33 V.S.A. § 3205 supersedes the general powers of placement embodied in 33 V.S.A. § 657(a)(3), insofar as out-of-state placements fall within the provisions of the Interstate Compact. 33 V.S.A. ch. 42. As we have already noted, under 33 V.S.A. § 3152(4), a "placement" under the Compact does not include arrangement for care in "any institution primarily educational in character." It is, therefore, essential to determine the character of the "camp" in question. If it is primarily educational in character, it is within the general powers of the commissioner under § 657 to transfer the juvenile to it, without the determinations

required by § 3156 of lack of equivalent in-state facilities, best interests of the child, and absence of undue hardship. If it is not primarily educational in character, these findings are a requirement, as there is no contention that the "camp" falls within any other exclusion from the "placement" definition of § 3152(4). In the instant case there was no showing, and no finding, of educational character.

In the instant case the juvenile court found that the Florida "camp" to which J. S. has been sent is similar to a camp in this state run by the same organization, but that the Florida "camp has been in existence considerably longer" and has "a more positive culture." The court also recited the testimony of several witnesses and concluded that placement in the Florida "camp" was "in the best interest of the Juvenile." The court made no findings that the "camp" was the sort of facility to which the commissioner is empowered to send juveniles under the compact, nor did it address the hardship of such a transfer.

As this Court has repeatedly instructed lower tribunals, "[a] recitation of evidence in findings is not a finding of the facts contained in the testimony related and it cannot be so construed." *Krupp* v. *Krupp,* 126 Vt. 511, 514, 236 A.2d 653, 655 (1967); see *State* v. *Powers,* 136 Vt. 167, 168, 385 A.2d 1067, 1068 (1978); *Fireman's Fund Ins. Co.* v. *Knutsen,* 132 Vt. 383, 387, 324 A.2d 223, 227 (1974). The "findings" are, therefore, insufficient. The court's conclusion that the transfer is in the best interest of J. S. is not supported by findings of fact. Similarly, the court's determination that the Florida "camp" has "a more positive culture" than Vermont facilities is not supported by findings of fact that would support a conclusion that there were no "equivalent facilities" in Vermont as required by the statute.

On remand, the juvenile court should hold a new hearing, since this matter and the juvenile are both a year older. It should determine whether the "camp" is an institution primarily educational in character or not. If so, the placement is governed by the provisions of 33 V.S.A. § 657, not by the provisions of the Interstate Compact requiring a hearing, and the juvenile's petition for hearing should be dismissed. If not, the provisions of the Compact govern, the

conditions set out in 33 V.S.A. § 3156 must be satisfied, and appropriate findings in that respect are required.

■ Subsequent to oral argument the department brought to our attention the fact that J. S. is no longer enrolled at the Florida "camp" and argued that the case is therefore moot. Under the mootness doctrine an appellant's stake in the litigation must continue throughout its entirety, and this Court may not issue advisory opinions. *In re M. A. C.,* 134 Vt. 522, 523, 365 A.2d 254, 255 (1976). However, we recognize an exception to this doctrine for situations which are "capable of repetition, yet evading review." *State* v. *O'Connell,* 136 Vt. 43, 45, 383 A.2d 624, 625 (1978); *Roe* v. *Wade,* 410 U.S. 113, 125 (1973). This case involves such a situation, since the out-of-state placement may be of short duration, and may be readily changed. We have jurisdiction to decide this matter.

*Reversed and remanded.*